UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VIRGINIA STOKES,

                              Plaintiff,

        v.                                                    **DECISION AND ORDER**

KALEIDA HEALTH,                                     04-CV-638S(Sr)

                              Defendant.

## I.  INTRODUCTION

Plaintiff Virginia Stokes, acting *pro se*, commenced this action on July 30, 2004, by

filing a Discrimination Complaint with the Clerk for the United States District Court, Western

District of New York.   Thereafter, Plaintiff sought leave to amend her complaint.   Her

motion was granted and Plaintiff filed an Amended Complaint on January 5, 2005.

Therein, Plaintiff alleges that her employer, Defendant Kaleida Health, discriminated

against her and subjected her to a hostile work environment based on her race, color and

sex, and retaliated against her for complaining of discrimination, all in violation of Title VII

of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

Presently before this Court is Kaleida Health's Motion for Summary Judgment

dismissing the Amended Complaint in its entirety and with prejudice, filed on August 18,

2006.   (Docket No. 55.)[1]   For the reasons stated below, Kaleida Health's Motion for

---

[1] In support of its Motion, Kaleida Health filed and served a Local Rule 56.2 Notice to *Pro Se*
Litigants Opposing Summary Judgment (Docket No. 56), a Local Rule 56.1 Statement of Undisputed
Facts with Appendix of Exhibits (Docket No. 57), the Declaration of Vicky Loretto (Docket No. 58), the
Declaration of Amy L. Hemenway, Esq. (Docket No. 59), a Memorandum of Law (Docket No. 60), and the
Reply Declaration of Amy L. Hemenway, Esq. (Docket No. 67).
        Plaintiff Stokes was directed to respond to the Motion for Summary Judgment by September 29,

Summary Judgment is granted and the Amended Complaint is dismissed.

## II.  BACKGROUND

Plaintiff was employed by Kaleida Health or one of its predecessors, Buffalo General Hospital, from July 19, 1993 through September 12, 2005.  (Loretto Decl. ¶¶ 4-5). Throughout her employment, Plaintiff was a Staff Counselor in the Emergency Room Psychiatric Unit at the Buffalo General Hospital location ("Psychiatric ER").  (*Id.* ¶ 5.) Plaintiff's duties included conducting initial assessments of patients for admission to the hospital's inpatient psychiatric unit, or, where appropriate, transfer to another facility.  (*Id.* ¶ 14.)

In or about October 2000, the administration of the Psychiatric ER was transferred from the Outpatient Psychiatric Department to the Inpatient Behavioral Health Department. (*Id.* ¶ 15.)  As part of the reorganization, the rotating four-shift structure then in place in the Psychiatric ER was replaced with the three-shift structure applicable to the inpatient psychiatric unit employees.  (*Id.*)  In addition, Psychiatric ER employees began reporting to a different supervisor.  (*Id.*)

On or about March 29, 2002, Plaintiff submitted a typewritten complaint to Kaleida Health's Human Resources Department in which she complained that she had been subjected to ongoing harassment since the change in her department's management. Specifically, Plaintiff alleged that she had been "shadowed" by a co-worker and supervisor and accused by Karen Jones, an RN, of stealing a pen.  (*Id.* ¶ 17; Docket 57-2, Ex. I.)

---

2006 (Docket No. 62), which date was later extended to November 8, 2006 (Docket No. 64), and finally, December 1, 2006 (Docket No. 66).  Though she was given numerous opportunities to submit responding papers, Plaintiff has not done so.

Raymond Konieczek, a Senior Employee Relations Specialist, met with Plaintiff on April 3, 2002, as a first step in an investigation of her complaint.  During that meeting, Plaintiff also stated her concerns that she was being "shadowed" by security, that co-workers were going into her purse when she left it in her desk and that she was being disciplined unfairly.  At the end of their meeting, Konieczek asked Plaintiff to provide additional information about her complaints, which she agreed to do.  (Loretto Decl. ¶ 18; Docket 57-2 Ex. M.)  Sometime thereafter, Plaintiff provided Konieczek with handwritten notes stating that there had been subtle hints that she was taking items from the office, and that two co-workers were harassing and intimidating her by attempting to look for instances of professional misconduct.  (Docket 57-2 Ex. J.)

In May 2002, Konieczek conducted interviews with Plaintiff's supervisors and coworkers, including alleged harassers, to which Plaintiff and her union representative were invited.  (Loretto Decl. ¶¶ 20-21; Docket No. 57-2 Exs. M-O.)  Konieczek also contacted the hospital's security manager to determine whether anyone had requested that security watch or follow Plaintiff.  (Loretto Decl. ¶ 22; Docket No. 57-2 Ex. M.)  Konieczek was advised that there had been no such request and there was no internal investigation relating to Plaintiff.  (*Id.*)  He relayed that information to Plaintiff via telephone on June 20, 2002.  (*Id.*)

After Plaintiff complained of dissatisfaction with her union representation, Konieczek met with Plaintiff and her union's vice-president on June 27, 2002.  (Loretto Decl. ¶ 23; Docket No. 57-2 Ex. M.)  During that meeting Konieczek advised Plaintiff and her union that there was a lack of supporting evidence for Plaintiff's allegations and that the results of his investigation were, at that time, inconclusive. (*Id.*)  At the close of that meeting,

Plaintiff presented Konieczek with an additional written complaint which alleged that she had been harassed by security guard Petruzzi when he stepped between her and a coworker with whom she was conversing.  (Loretto Decl. ¶ 24; Docket No. 57-2 Exs. L, M.) Plaintiff claimed that when she later confronted Petruzzi, he accused her of being paranoid and delusional.  (*Id.*)  Konieczek conducted additional interviews with security officers and Plaintiff's coworkers relative to her complaint against Petruzzi.  (Loretto Decl. ¶ 25, Docket No. 57-2 Exs. M, N.)

On August 26, 2002, Konieczek informed Plaintiff that he had completed his investigation of her complaints and would be preparing a written report.  (Loretto Dec. ¶ 26; Docket No. 57-2 Ex. M.)  When Konieczek asked how things were going, Plaintiff reported that security was no longer following her.  (*Id.*)

On or about September 19, 2002, prior to her receipt of Konieczek's written report, Plaintiff filed a discrimination complaint with the New York State Division of Human Rights ("DHR"), alleging that she was subjected to disparate [treatment], harassed by coworkers, falsely accused of theft and constantly watched by security because of her race/color, Black.  (Docket No. 57-2 Ex. A.)

Less than one week later, on September 25, 2002, Konieczek issued his promised written report detailing Plaintiff's complaints, the steps taken to investigate, and Konieczek's conclusion that there was no evidence of the harassment and intimidation that she alleged.  (Loretto Decl. ¶ 27, Docket No. 57-2 Ex. M.)

Shortly after receiving the report, on October 3, 2002, Plaintiff submitted a further written complaint to Konieczek stating her unhappiness with his September 25 report and alleging that on September 28, 2002 she had been further harassed by a male coworker,

4

Gruchy, who opened the door to a restroom she was using.  (Loretto Decl. ¶ 30; Docket No. 57-2 Ex. P.)  Within one week, on October 8, 2002, Konieczek met with the accused coworker, Plaintiff and her union representative.  Gruchy explained that the bathroom door was unlocked and he did not know anyone was inside when he opened it.  (Loretto Decl. ¶ 31, Docket No. 57-2 Ex. S.)

Several months later, on March 12, 2003, Plaintiff submitted another written complaint to Konieczek alleging that security was monitoring her telephone calls and that a male coworker, Izquierdo, was watching her on monitors in the security office.  (Loretto Decl. ¶ 32; Docket No. 57-2 Ex. Q.)  On April 16, 2003, Konieczek and other Human Resources Department employees met with Plaintiff in the security office, where it was demonstrated to Plaintiff that the security cameras were in a fixed position that did not allow for observation of the Psychiatric ER office.  (Loretto Decl. ¶ 33; Docket 57-2 Exs. R, S.) Konieczek also had Kaleida Health's Director of Information Systems & Engineering and Director of Safety & Security investigate whether Plaintiff's phone line could be monitored.  It was determined that telephone extensions in the Psychiatric ER could not be accessed by any lines outside that unit.  (Loretto Decl. ¶ 34; Docket No. 57-2 Exs. R, S.)  Upon completing his investigation of the March 12, 2003 complaint, Konieczek again issued a written report to Plaintiff, dated May 15, 2003, in which he detailed the steps taken to investigate and his conclusion that there was no evidence to support her allegations. (Loretto Decl. ¶ 35; Docket No. 57-2 Ex. R.)

Throughout this time, Plaintiff's DHR complaint was pending.  On March 8, 2004, following its own investigation, the DHR determined that there was no probable cause to believe that Kaleida Health had engaged in discrimination or that any matters of which

Plaintiff complained were related to her race and color.  (Docket No, 57-2 Ex. B.) Specifically, the DHR's investigation did not reveal that Plaintiff had been harassed by coworkers or security employees.  (*Id.*)  The DHR also noted that Kaleida Health had investigated and taken prompt remedial action on Plaintiff's specific complaints.  (*Id.*)

On or about May 7, 2004, the Equal Employment Opportunity Commission ("EEOC") adopted the DHR's findings and issued a Dismissal and Notice of Rights.  (*Id.* Ex. C.) Plaintiff commenced this action less than 90 days thereafter, on July 30, 2004, by filing a Complaint on a form provided by the Court.  An Amended Complaint was filed on January 5, 2005.[2]

By checking various boxes, and in narrative form, Plaintiff generally alleges in her initial Complaint that Kaleida Health failed to promote her, and subjected her to unequal terms and conditions of employment and a hostile work environment based on her race, color and sex, in violation of Title VII.  (Docket No. 1.)  Plaintiff indicates that the first alleged discriminatory act occurred in January 1995, a subsequent act(s) occurred in 2000, and that Kaleida Health was still committing acts of discrimination against her.[3]  (*Id.* ¶¶ 5-7.)  Plaintiff specifically alleges that she was accused of theft, and she attached her DHR complaint, which also includes the allegation that she was constantly watched by security. (*Id.* at 6-8.)

In her Amended Complaint, Plaintiff further alleges that Kaleida Health retaliated

---

[2]  What Plaintiff actually filed on January 5, 2005, was an Addendum to her Complaint.  By Decision and Order dated January 31, 2005, this Court directed that her original Complaint, along with the Addendum, be construed as the Amended Complaint.

[3]  There are no allegations of fact as to what occurred on the referenced dates, who engaged in discriminatory conduct, or what purported discrimination continues to occur.

against her because she "fil[ed] a Complaint with the Division of Human Rights and the Equal Employment Opportunity Commission." (Docket No. 15 at 10.)  Plaintiff attached to her Amended Complaint Konieczek's written report of September 25, 2002, detailing his investigation of her internal complaints received through June 27, 2002.  (*Id*. at 17-18, 24-25.)

Kaleida Health seeks summary judgment dismissal of the Amended Complaint on the grounds that: 1) Plaintiff failed to exhaust her administrative remedies with respect to her failure to promote, gender and retaliation claims, 2) Plaintiff has not established a *prima facie* case of race-based discrimination, and, 3) were this Court to conclude the retaliation claim is exhausted, the claim is insufficient as a matter of law.  As stated at footnote 1, Plaintiff was afforded ample opportunity to respond to Kaleida Health's motion, but has not done so.  Each of Kaleida Health's arguments is discussed below, as necessary.

## III.  DISCUSSION

### A.   Exhaustion of Administrative Remedies

Ordinarily, a plaintiff commencing a Title VII action must exhaust her administrative remedies by first presenting her claims to the applicable administrative agency.  Bailey v. Colgate-Palmolive Co., No. 99 Civ. 3228, 2003 U.S. Dist. LEXIS 8175, at *33-34 (S.D.N.Y. May 14, 2003), *aff'd*, 93 Fed. Appx. 321 (2d Cir. Apr. 1, 2004).  Failure to do so defeats the purpose of Title VII's statutory notice provision, which is "to encourage settlement of discrimination disputes through conciliation and voluntary compliance."  Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 26 (2d Cir. 1985); Burnett v. ESL Fed. Credit Union, 198

F.Supp.2d 307, 314-15 (W.D.N.Y. 2002).

Although exhaustion is typically viewed as an essential element of a Title VII claim, the Second Circuit has held that claims not raised in an administrative complaint may be brought in federal court if they are "reasonably related" to the claim filed with the agency. Williams v. New York City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (quoting Legnani v. Alitalia Linee Aeree Intaliane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001), and Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded by statute on other grounds as stated in*, Hawkins v. 1115 Legal Servs. Care, 163 F.3d 684, 693 (2d Cir. 1998)).   In Butts, the Second Circuit identified three situations where unexhausted claims may be "reasonably related" to properly presented claims: 1) "where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" 2) where the "claim is one alleging retaliation by an employer against an employee for filing an EEOC charge;" and 3) "where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."   Butts, 990 F.2d at 1402-03 (quotations and citations omitted).

Plaintiff's administrative complaint generally alleged employment discrimination on the basis of race and color, and specifically stated that:

> Anthony Sarzanowicz and Ronald Jozwiak, Nurse Managers, are subjecting me to disparate [ ] because I am Black.  They are attempting to terminate my employment.  They allow my coworkers to continuously harass me.  I have been falsely accused of theft, and now I am constantly watched by security. I complained to Ray Konieczek in Human Resources, but as of September 19, 2002, respondent has not taken any corrective action.  Respondent is subjecting me to a hostile work environment because I am Black.

8

### 1.    Failure to Promote

It is evident that Plaintiff did not state a failure to promote claim in her DHR complaint.  Moreover, the discriminatory conduct described therein—false accusations of theft and being watched by security—would not have prompted the DHR to investigate whether Plaintiff had been denied a promotion.  Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (in determining whether claims are reasonably related, courts must consider whether facts alleged in administrative complaint would sufficiently alert agency of need to investigate the instances or claims later alleged in lawsuit); Brown v. Snow, 2003 U.S. Dist. LEXIS 6563, at *8 (S.D.N.Y. Apr. 17, 2003) (plaintiff failed to exhaust administrative remedies where administrative complaint did not allege failure to promote or allege any facts from which such a claim could be inferred).

This Court agrees that Plaintiff's failure to promote claim must be dismissed for failure to exhaust her administrative remedies.

### 2.    Sex-Based Discrimination

In her Amended Complaint, Plaintiff alleges that she was discriminated against because she is Black and female.  However, her DHR complaint alleged discrimination based solely on her race and color.  "A claim not included in an [administrative complaint] will not be deemed 'reasonably related' where the claim is based on 'a wholly different type of discrimination' from that alleged in the . . . complaint, or '[w]here the facts in the original [administrative complaint] do not sufficiently apprise the [agency] that another type of discrimination claim lurks in the background . . . .'" Keener v. Bell Atlantic-New York, 06-CV-00313C(F), 2006 U.S. Dist. LEXIS 91570, at *6 (W.D.N.Y. Dec. 19, 2006) (quoting

<u>Alonzo v. Chase Manhattan Bank, N.A.</u>, 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998)).

As Kaleida correctly argues in its motion for summary judgment, Plaintiff's claim of sex discrimination is not reasonably related to the race claim set forth in her DHR complaint because it cannot be expected that the scope of an investigation into the alleged instances of race discrimination would have evolved to encompass sex discrimination, as well.  *See* <u>Barriera v. Bankers Trust</u>, 98 Civ. 3641 (MBM), 2003 U.S. Dist. LEXIS 18601, at *14-15 (S.D.N.Y. Oct. 20, 2003) (citations omitted) (dismissing gender claim where only race-based discrimination was alleged in administrative complaint); *see also*, <u>O'Neal v. State Univ. of N.Y., Health Sci. Ctr. Brooklyn</u>, No. CV-01-7802, 2003 U.S. Dist. LEXIS 4404, *9 (E.D.N.Y. Mar. 24, 2003) (race discrimination claim not reasonably related to administrative charge alleging gender discrimination only).  Because Plaintiff did not put the DHR on notice that she was subjected to sex discrimination, the claim must be dismissed for failure to exhaust administrative remedies.

### 3.    Retaliation

Though Kaleida Health contends it is unclear whether Plaintiff alleges retaliation for filing internal complaints or her administrative complaint, this Court notes that the Amended Complaint expressly alleges retaliation for filing a DHR complaint.  At first blush, Plaintiff's retaliation claim would appear to fall squarely within the <u>Butts</u> holding that a claim in a subsequent lawsuit may be reasonably related to an administrative complaint when it alleges retaliation by an employer against an employee for filing the administrative complaint.  <u>Gratton v. Jetblue Airways</u>, 04 Civ. 7561 (DLC), 2005 U.S. Dist. LEXIS 10188, at *28-29 (S.D.N.Y. May 25, 2005); <u>Culbertson v. Charosa Found. Corp.</u>, 03-CV-3742

(SJF) (LB), 2004 U.S. Dist. LEXIS 21064, at *11-12 (E.D.N.Y. Oct. 18, 2004).

Nevertheless, as Kaleida correctly notes, Plaintiff's retaliation claim bears no reasonable relationship to her underlying charge for a very simple reason.  Even under the most liberal reading of the Amended Complaint, including all allegations contained in attachments thereto, Plaintiff has not identified any purportedly discriminatory acts that occurred after she filed her DHR complaint.  Where the allegedly discriminatory conduct all occurred prior to the filing of the administrative complaint, that conduct could not have occurred in retaliation for filing the complaint and, therefore, the claim does not fall within the second category of "reasonably related" instances set forth in <u>Butts</u>.  <u>Culbertson</u>, 2004 U.S. Dist. LEXIS 21064, at *11-12.   Accordingly, Plaintiff's retaliation claim must be dismissed for failure to exhaust administrative remedies.

**B.     Plaintiff's Hostile Work Environment Claim**

Plaintiff generally alleges the existence of a race-based hostile work environment and, assuming her reliance on her attached DHR complaint,[4] the race-based harassment purportedly commenced with the change in her department's oversight and involved her being falsely accused of taking a nurse's pen and being watched by security.  Based on Konieczek's September 25, 2002 written report, Plaintiff also made internal complaints of a supervisor or coworker "shadowing" her on three occasions, a change in her shift assignment following the administrative change in her department, a security guard being disrespectful by interrupting a conversation she was having, coworkers going into her purse

---

[4]  This Court gives the Amended Complaint the most liberal reading possible, including all attachments.  Absent the attachments, the sole factual allegation in the Amended Complaint is the bare assertion that Plaintiff was accused of theft.

if she left it unattended, and unfair discipline.[5]  Although they are not referenced in or attached to her Amended Complaint, Kaleida Health also takes note of Plaintiff's later internal complaints that a male employee opened the door to a restroom she was using, and of her belief that her telephone calls were being monitored and she was being watched by a coworker on security monitors.

To survive a motion for summary judgment on a hostile work environment claim, a plaintiff must establish two elements.  First, the plaintiff must show that "her workplace was permeated with 'discriminatory intimidation, ridicule and insult . . . that [wa]s sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive working environment.'"  Ribis v. Mike Barnard Chevrolet-Cadillac, Inc., 03-CV-6489L, 2007 U.S. Dist. LEXIS 1397, at *28 (W.D.N.Y. Jan. 8, 2007) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (internal citations and punctuation omitted).  Second, the plaintiff must show the existence of a specific basis for imputing the conduct that created the hostile work environment to her employer.  Ribis, 2007 U.S. Dist. LEXIS 1397, at *28 (citing Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir.), cert. denied, 540 U.S. 1016, 124 S. Ct. 562, 157 L. Ed. 2d 428 (2003); Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002); Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)).

## 1.     Severe and Pervasive Conduct

To meet the first requirement, Plaintiff must demonstrate "either that a single

---

[5] These allegations, though not specifically alleged in Plaintiff's DHR complaint, appear to have been investigated by the DHR and, in any event, could reasonably have been expected to fall within the scope of its investigation.  (Docket No. 57-2 Ex. B.)

incident was extraordinarily severe, or that a series of incidents was sufficiently continuous and concerted to have altered the conditions of her working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (internal punctuation omitted).

In Harris, the Supreme Court set forth a non-exhaustive list of factors relevant to determining whether the alleged conduct was so "severe or pervasive" that it supports a Title VII claim of discrimination, including: 1) the frequency of the discriminatory conduct; 2) its severity; 3) whether the conduct was physically threatening or humiliating, or a "mere offensive utterance;" 4) whether the conduct unreasonably interfered with the plaintiff's work; and 5) what psychological harm, if any, resulted. 510 U.S. at 23.

As detailed in the factual recitation at Section II above, evidence gathered by Kaleida Health during its investigation disproved a number of Plaintiff's complaints. For instance, Kaleida's investigation revealed that Plaintiff had not been accused of stealing a pen, but rather, a nurse merely had asked several employees if they had seen her missing pen. (Docket No. 57-2 Exs. M-O.) Similarly, Kaleida determined that the change in Plaintiff's shift start and end times was part of a department-wide adjustment that did not single her out or result in any change to her full-time status or total hours worked, and no disciplinary action had been taken against her in the prior 18 months. (Id., Ex. M.) Finally, Kaleida confirmed that security personnel could not monitor phone calls placed from Plaintiff's office, and that security cameras were not positioned in a way that allowed anyone to watch Plaintiff's work area. (Id., Exs. M, R, S.) Plaintiff has not responded to Kaleida Health's Motion and, therefore, has not presented any evidence of the existence of a genuine issue of material fact in regard to these purported incidents of harassment. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91

L. Ed. 2d 265 (1986).

The remaining incidents—a supervisor or coworker "shadowing" her on three different days, a security guard interrupting her, coworkers going into her unattended purse, and a coworker opening the door of a bathroom she was using—all appear to have occurred over a period of at least six months.  Even were this Court to assume the truth of Plaintiff's unsupported allegations, these incidents simply are not severe or pervasive enough to alter the conditions of her employment.  *See* Leibovitz v. New York City Transit Auth., 252 F.3d 179, 189 (2d Cir. 2001) ("[C]onduct that is merely offensive" is not sufficiently severe to "rise to the level of a hostile work environment.") (citation omitted); *see also* Brennan v. Metropolitan Opera Assoc., Inc., 192 F.3d 310, 318 (2d Cir. 1999) ("Isolated, minor acts or occasional episodes do not warrant relief."); Ogbo v. New york State Dep't of Fin., 99 Civ. 9387 (HB), 2001 U.S. Dist. LEXIS 12920, at *23 (S.D.N.Y. Aug. 28, 2001), *aff'd*, 45 Fed. Appx. 58 (2d Cir. 2002) (five purported comments made over two year period not sufficient to support claim of hostile work environment based on national origin).

Significantly, Plaintiff has not offered any evidence of racial motivation and none of the circumstances at issue begin to suggest that Plaintiff's coworkers were motivated by race-based animus.  The fact that Plaintiff has not alleged any cursing, insults, jokes, or comments implicating her race, and did not even mention race in her internal complaints to Kaleida Health, "casts considerable doubt" on her race claim.  Ogbo, 2001 U.S. Dist. LEXIS 12920, at *24 (hostile work environment claim dismissed where plaintiff presented no evidence that conduct complained of was motivated by his race, color and national origin).

14

Accordingly, Plaintiff's hostile work environment claim is subject to dismissal based on her failure to meet the first requirement of her claim.

### 2.    Employer Liability

Even had Plaintiff demonstrated that she had suffered an actionable hostile work environment based on her race, that alone is not sufficient to impute liability to Kaleida Health.   Plaintiff has the additional burden of proving that the employer did not take reasonable steps to address her complaints.

In moving for summary judgment, Kaleida Health submitted evidence that it maintains an anti-harassment policy and procedures for problem resolution, which Plaintiff utilized.  G-J, L, P, Q.  In addition, Kaleida Health submitted evidence demonstrating that it investigated each written complaint submitted by Plaintiff, as well as verbal complaints she raised during the course of the investigations.  Kaleida Health invited Plaintiff and her union representatives to employee interviews, apprised them of the status and progress of the investigations, and provided Plaintiff with written reports detailing its actions and conclusions regarding each of her complaints.

In light of Kaleida Health's prompt and thorough investigation, which Plaintiff has not disputed, no issue of material fact has been raised that would suggest Kaleida Health did not provide a reasonable avenue for employee complaints, or that it knew of alleged harassment, but did nothing about it.  Perry, 115 F.3d at 149 (quoting Karibian v. Columbia Univ., 14 F.3d 773, 780 (2d Cir.), *cert. denied*, 512 U.S. 1213, 114 S. Ct. 2693, 129 L. Ed. 2d 824 (1994)).  Kaleida Health's conclusions that the circumstances of each of the alleged incidents did not suggest that Plaintiff was targeted or harassed does not alter this result.

15

## IV.  CONCLUSION

For the reasons stated, Defendant Kaleida Health's Motion for Summary Judgment seeking dismissal of the Amended Complaint is granted.

## ORDERS

IT HEREBY IS ORDERED, that Defendant Kaleida Health's Motion for Summary Judgment (Docket No. 55) is GRANTED and the Amended Complaint is dismissed in its entirety.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.


SO ORDERED.

Dated:      February 23, 2007
            Buffalo, New York


                                        /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                        United States District Judge

16